**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **PRINCELLA S. SATTERFIELD,**<br><br>    **Plaintiff,**<br><br>    *vs*.<br><br>**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**<br><br>    **Defendant.** | **CAUSE NO. 1:16-cv-492-DKL-JMS** |

**ENTRY**

Plaintiff Princella S. Satterfield applied for disability benefits under the Social Security Act. The defendant Commissioner denied her application and she filed this suit for judicial review. Pursuant to the parties' consents, the assigned district judge referred this case to the undersigned magistrate judge to conduct all proceedings and to order entry of final judgment. *Notice, Consent, and Reference of a Civil Action to Magistrate Judge* [doc. 13]. This matter is now fully briefed and ready for decision. This *Entry* explains the Court's rationale for its judgment.

**Standards**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If

3

the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions. At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work

4

level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

Disability benefits under the Supplemental Security Income ("SSI") program are available to individuals based on financial need.

**Background**

Ms. Satterfield applied for SSI benefits in March 2013. After denials by the state agency on initial and reconsideration reviews, she received a hearing before an ALJ in October 2014. She and a vocational expert testified. The ALJ issued his decision in November 2014.

At step one, he found that Ms. Satterfield had not engaged in substantial gainful employment since her application date. At step two, he found that she had the severe impairments of syncope episodes, benign hypertension, chronic headaches morbid obesity, acquired spondylolisthesis, lumbar spinal stenosis, and degeneration of lumbar or lumbosacral intervertebral disc. He found that her alleged additional impairments of depression-associated issues (including fatigue, disturbed sleep patterns, irritability, and decreased sex drive), anxiety (including inability to be around people and isolating herself), inability to handle stress or changes in routine, and fibromyalgia are not medically determined impairments. At step three, he found that her impairments do not meet or medically equal any of the conditions in the listing of impairments. He specifically considered listing 1.04, disorders of the spine.

For steps four and five, the ALJ defined Ms. Satterfield's RFC. He found that she can perform light work with the following additional restrictions to accommodate her obesity and back issues: only occasionally kneel, stoop, squat, crouch, and climb stairs

and ramps; never climb ladders, ropes, or scaffolds; never crawl; avoid concentrate exposure to extreme temperatures, humidity, and vibrations; avoid work hazards.

At step four, the ALJ found that Ms. Satterfield could not perform her past relevant work with her defined RFC. At step five, he relied on the testimony of the vocational expert to find that, considering her RFC, age, education, and skills, there is a significant number of jobs in the national economy that she can perform. Therefore, he found that she was not disabled.

The Commissioner's Appeals Council denied Ms. Satterfield's request for review and she filed this suit for judicial review.

## Discussion

Ms. Satterfield argues four errors in the ALJ's decision.

**1. The ALJ ignored a lumbar-spine MRI.** Ms. Satterfield argues generally that the ALJ "ignored or rejected the evidence which proved she was disabled and thus erroneously based his denial decision only on his own layperson's expertise." *Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 17] ("*Brief*"), at 6. Because she identifies only one piece of evidence that she contends the ALJ rejected or ignored, that is the only evidence that the Court will review. That evidence is an interpretive report of a November 18, 2011 lumbar-spine MRI evaluation, (R. 393-95), which, she contends, shows that "she had a herniated disc at the L3-L4 vertebral level which pressed on the exiting left L3 nerve root." *Id*. (The report actually states that, at

7

L3-L4, there is a disc bulge, a disc protrusion, and mild left neuroforaminal narrowing, with mild "mass effect" on the left L3 nerve root, secondary to the disc protrusion. (R. 393-94.)) She argues that "[t]his is objective evidence which is required to prove she was totally disabled pursuant to Listing 1.04A. The ALJ's review of the evidence in search of 'objective' evidence overlooked this MRI." *Id*. The Court understands Ms. Satterfield's rather disjointed argument to be that the ALJ erred by failing to discuss this MRI report in his step-three analysis and that this error is not harmless because the report proves that her back impairment meets the criteria of listing 1.04A.

The Commissioner concedes that the ALJ did not address the MRI report but she points out that a state-agency physician considered the report on initial review, (R. 126), and found that Ms. Satterfield's impairments did not satisfy listing 1.04, (R. 124, 130), *Defendant's Memorandum in Support of the Commissioner's Decision* [doc. 22] ("*Response*"), at 10, and she argues that ALJs are entitled to rely on the evaluations of expert state-agency physicians, *id*. (citing 20 C.F.R. § 416.927(e)(2)(i); S.S.R. 96-6p; and *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993)). Although the agency's *Disability Determination Explanation* form, on which the state-agency physician recorded his initial-review findings, (R. 121-

8

29), shows that he considered the MRI report[2] and listing 1.04, (R. 124),[3] he recorded only a brief description of one of the report's many findings and no explanation of his rationale why Ms. Satterfield's back impairments did not satisfy listing 1.04.[4]

Ms. Satterfield only asserts that the MRI report proves that her impairments satisfy listing 1.04A. She offers no explanation of how the listing's criteria are satisfied by the information in the report. While neither the ALJ nor the state-agency physician on which he relied articulated their own evaluations of the evidence compared against the listing's criteria, they found that the criteria were not satisfied. In addition, the ALJ's extensive discussion of the severity of Ms. Satterfield's back impairments, symptoms, and resulting functional limitations shows that he found that she was stable and her pain was under control with medication and conservative therapy; her treating physician provided only conservative treatment and did not make referrals for more aggressive care, surgery, or specialist consultations; Ms. Satterfield reported no lower-back symptoms during an

---

[2] Asked to explain how and why specific evidence supports his conclusions about the claimant's exertional limitations, he wrote:

> Dr. Brahmbhatt, 3/2013, ROM "terminally restricted and painful" in lumbar. Normal gait. Was unable to heel/toe.
> BMI: 46.8. ROM in knees not mentioned.
>
> Reid Hosp: Lumbar MRI shows moderate spinal stenosis.

(R. 126.) This is the only mention of the MRI on the form.

[3] The reviewer only identified the general listing by number, "1.04," and subject, "Spine Disorders." (R. 124.)

[4] His finding that the listing was not satisfied is a necessary inference from the facts that, after recording that he considered listing 1.04, he proceeded to record RFC findings and he concluded that Ms. Satterfield is not disabled, (R. 128, 130 (initial-review *Disability Determination and Transmittal* form)).

April 2014 visit and reported improved symptoms during some visits; and the objective findings and Ms. Satterfield's subjective complaints were usually unchanged over the range of treatments and follow-up visits. (R. 15-16, 17.) The ALJ also discussed an August 2013 lumbar image (over two years after the unaddressed lumbar MRI scan) that, despite showing some abnormalities, did not cause Ms. Satterfield's treating physician to undertake more aggressive treatment and was unaccompanied by changed objective findings or increased subjective complaints. Ms. Satterfield does not assert or show any significant differences between this image and the MRI report. The ALJ also noted that, over the course of her treating physician's care, he never reported quantified functional limitations or precluded her from working. The ALJ (and the state-agency medical reviewers) clearly did not believe that Mr. Satterfield's back impairments were of listing-level or disabling severity. In this context, it was incumbent on Ms. Satterfield, indeed it was her burden, to show that the record proved satisfaction of listing 1.04A. She did not do so. The Court also notes that her representative did not present to the ALJ, either by brief or during the hearing, any argument that she satisfied the listing.

The Court will not — it may not — undertake on its own to evaluate the MRI report and other evidence in the record to determine whether they support a finding that Ms. Satterfield's back impairments meet or medically equal the criteria of listing 1.04A. Again, that was Ms. Satterfield's responsibility. Evidence is subject to varied interpretations and the decision of which reasonable interpretation is most convincing is a judgment reserved to the Commissioner, not the courts on review. It has not been

shown that, on this record and with respect to the specific 2011 MRI report, satisfaction of the listing is evident. In addition, on review, the Court finds that the findings and terminology of the MRI report do not precisely track the criteria of listing 1.04A or obviously address all of the criteria.

The Court concludes that Ms. Satterfield has not shown error.

**2. The ALJ required objective medical support for subjective allegations.** Ms. Satterfield argues that the ALJ erroneously rejected her allegations of severe, disabling subjective symptoms because they were not supported by objective medical evidence. *Brief*, at 6, 7. She cites one item of evidence, a report of a follow-up visit with her treating physician, Dr. Brahmbhatt, (R. 366-67), which she argues explains the basis for her chronic pain and resulting vocational limitations, *Brief*, at 7. She argues that subjective evidence alone can be sufficient to support a finding of disability and that the ALJ's "conclusory rejection" of her allegations of disability because they are not supported by objective medical evidence is reversible error. *Id.*

The existence of inconsistent objective medical evidence and the absence of supporting objective medical findings is a factor that an ALJ must consider in evaluating the intensity and persistence of a claimant's alleged symptoms. 20 C.F.R. § 416.929(a) and (c); S.S.R. 96-7p (superseded by S.S.R. 16-3p for adjudications after March 16, 2017). The ALJ did not discount Ms. Satterfield's allegations about the intensity, persistence, and limiting effects of her symptoms solely because they were not confirmed or verified by objective medical evidence. Rather, after reciting her symptoms and limitations

allegations, (R. 15), he found them inconsistent with the medical evidence (*e.g.*, very conservative treatments, stabilized with medications, normal gait, lack of prescribed functional limitations precluding work, ), activities of daily living, (R. 18); and other evidence (*e.g.*, Ms. Satterfield's reports of improvement in or lack of symptoms at times, as late as 2014; performance of semi-skilled work). (R. 18 ("[T]here were many inconsistencies between the claimant's testimony and the longitudinal record.").)

Ms. Satterfield has not shown error.

**3. Failure to call a medical advisor regarding medical equivalence to listings.** Ms. Satterfield argues that the ALJ erred by failing to call a medical advisor to provide an informed basis for determining whether her impairments were medically equal to a "any Listing." ("R. 9-10.) Rather, he "simply assumed the absence of medical equivalency without any relevant discussion." (R. 10.) Thus, he relied solely on his own layman's opinion of the quality of the medical evidence. *Id.*

*Disability Determination and Transmittal* ("*D.D.T.*") forms completed by agency medical experts satisfy the requirement for expert medical opinion on the subject of medical equivalency to the listings. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). As noted above, *D.D.T.* forms, accompanied by more extensive *Disability Determination Explanation* forms, are in the record. (R. 121-139.) Ms. Satterfield has neither shown error in these forms nor presented a developed legal and factual showing that her impairments medically equaled any of the listed conditions.

Ms. Satterfield has not shown error.

**4. Step-five determination.** Ms. Satterfield's sole assertion of error under this head is that the ALJ did not cite any evidence proving that she can stand six hours during and eight-hour workday. *Brief*, at 11. Other than descriptions of decisions by the Court of Appeals for the Seventh Circuit that reversed ALJs' decisions for failure to fully consider claimants' subjective complaints of symptoms or impairments, Ms. Satterfield offers nothing more. Perfunctory and undeveloped arguments, like this one, are forfeited. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). The ALJ articulated his evaluation of the record evidence and Ms. Satterfield's allegations, resolved conflicts, made credibility determinations, and made findings. It was Ms. Satterfield's burden to prove her disability and the ALJ did not fully believe her allegations of the degree of her symptoms and their limitations and he found that the record evidence supported the RFC that he defined. Ms. Satterfield has not shown error.

## Conclusion

Because Ms. Satterfield has not shown that the ALJ's decision is not supported by substantial evidence or the result of material legal error, judgment will issue affirming the Commissioner's denial of her claim for SSI benefits.

**DONE this date: 3/27/2017**

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.